# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-50833

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ANTONIO MORENO-FLOREAN

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, DeMOSS, and PRADO, Circuit Judges.

DeMOSS, Circuit Judge:

Defendant-Appellant Antonio Moreno-Florean (Moreno-Florean) pleaded guilty without a plea agreement to attempted illegal reentry into the United States after having been removed, in violation of 8 U.S.C. § 1326. Moreno-Florean's pre-sentence report (PSR), which relied on the 2006 Version of the Sentencing Guidelines Manual, assigned him a total offense level of twenty-one, consisting of a base offense level of eight pursuant to UNITED STATES SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2L1.2(a) (2006); a sixteen-level increase because he was removed after his 2004 California conviction for kidnapping, a conviction the PSR considered a crime of violence (COV) under § 2L1.2(b)(1)(A)(ii); and a three-level decrease pursuant to § 3E1.1(a) and (b) for

acceptance of responsibility. Moreno-Florean's criminal history score of nine placed him in a criminal history category of IV, which, combined with his total offense level, yielded a guidelines range of fifty-seven to seventy-one months of imprisonment.

Moreno-Florean objected to the PSR concerning its scoring of three past criminal convictions, but he did not object with respect to his California kidnapping conviction or the sixteen-level COV enhancement. At sentencing, Moreno-Florean indicated that his objection had been resolved. The district court sentenced Moreno-Florean within the guidelines range to fifty-seven months of imprisonment and three years of supervised release. Moreno-Florean timely appealed.

Moreno-Florean argues that his California kidnapping conviction was not a COV for purposes for § 2L1.2(b)(1)(A)(ii). We agree. Thus, we will vacate Moreno-Florean's sentence and remand for resentencing.

## I. ANALYSIS

### A. Standard of Review

Because Moreno-Florean raises this argument for the first time on appeal, the plain-error standard of review applies. United States v. Gonzalez-Ramirez, 477 F.3d 310, 311 (5th Cir. 2007). Under plain-error review, "a defendant must establish error that is plain and affects substantial rights." Id. "If these conditions are met, an appellate court may exercise its discretion to notice the forfeited error only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. at 311-12 (quotations omitted) (alteration in original). The relevant inquiry is whether the error is plain at the time of appellate consideration, not at the time of trial. United States v. Martinez-Vega, 471 F.3d 559, 561 (5th Cir. 2006).

### B. Crime of Violence Enhancement

#### 1. Section 2L1.2(b)(1)(A)(ii)

Section 2L1.2(b)(1)(A)(ii) provides for a sixteen-level increase to a defendant's base offense level if he was previously deported after being convicted of a felony that is a COV. United States v. Cervantes-Blanco, 504 F.3d 576, 578-79 (5th Cir. 2007). The Guidelines Manual commentary defines a COV as "(1) any of a list of enumerated offenses, including 'kidnapping,' or (2) 'any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.'" Id. at 579 (quoting § 2L1.2, cmt. n.1(B)(iii))). This court uses different tests when analyzing whether a particular offense amounts to a COV, and the test used depends on whether the offense is an enumerated one or has physical force as an element. United States v. Mendoza-Sanchez, 456 F.3d 479, 481-82 (5th Cir. 2006).

"In determining whether the [California] crime at issue here is the enumerated offense of 'kidnapping,' we look to the 'generic, contemporary' meaning of kidnapping, employing a 'common sense approach' that looks to the Model Penal Code, the LaFave and Scott treatises, modern state codes, and dictionary definitions." United States v. Iniguez-Barba, 485 F.3d 790, 791 (5th Cir. 2007). State-law labels do not control this inquiry because the COV "enhancement incorporates crimes with certain elements, not crimes that happen to be labeled 'kidnapping' . . . under state law." Gonzalez-Ramirez, 477 F.3d at 313.

"In determining whether an offense has as an element the use, attempted use, or threatened use of physical force against the person of another, this court uses the categorical approach set forth in Taylor v. United States, 495 U.S. 575, 600-02 (1990), and examines the elements of the offense, rather than the facts underlying the conviction." Mendoza-Sanchez, 456 F.3d at 482.

Under either approach, if the statute of conviction contains a series of disjunctive elements, this court may look beyond the statute to certain records

3

made or used in adjudicating guilt to determine which subpart of the statute formed the basis of the conviction. United States v. Mungia-Portillo, 484 F.3d 813, 815 (5th Cir.), cert. denied, 128 S. Ct. 320 (2007); United States v. Murillo-Lopez, 444 F.3d 337, 339-40 (5th Cir. 2006); see Gonzalez-Ramirez, 477 F.3d at 315. "These records are generally limited to the charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented." Murillo-Lopez, 444 F.3d at 340 (quotations omitted); accord Mungia-Portillo, 484 F.3d at 815. If the statute of conviction cannot be narrowed, we consider "whether the least culpable act constituting a violation of that statute constitutes 'kidnapping' for purposes of U.S.S.G. § 2L1.2." Gonzalez-Ramirez, 477 F.3d at 315-16.

In this case, the parties agree that Moreno-Florean's kidnapping conviction occurred pursuant to CAL. PENAL CODE § 207(a) as reflected in the indictment and abstract of judgment pertaining to the conviction.[1] Section 207(a) states, "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." The parties do not cite, and research did not reveal, any cases from this circuit or another circuit addressing the issue

---

[1] We have previously rejected the use of a California abstract of judgment with respect to the categorical approach. See United States v. Gutierrez-Ramirez, 405 F.3d 352, 357-58 (5th Cir. 2005). Our consideration of Moreno-Florean's abstract of judgment is limited to proving the existence of his prior kidnapping conviction; it does not function to narrow the statute of conviction based on the facts underlying the offense. See United States v. Neri-Hernandes, 504 F.3d 587, 590-92 (5th Cir. 2007), cert. denied, 128 S. Ct. 1106 (2008) (distinguishing consideration of New York certificate of disposition because it was used only to prove fact of prior conviction); see also United States v. Bonilla, 524 F.3d 647, 653 (5th Cir. 2008). California abstracts of judgment have sufficient indicia of reliability to support their probable accuracy such that the documents can be used as evidence of a prior conviction. See Neri-Hernandes, 504 F.3d at 591-92; see also People v. Mitchell, 26 P.3d 1040, 1043 (Cal. 2001) (noting that a certified abstract of judgment "constitutes the commitment" and serves as "the process and authority for carrying the judgment and sentence into effect") (quotations omitted).

whether a conviction under § 207(a) is a COV, as the term is currently defined for § 2L1.2(b)(1)(A)(ii) purposes.[2]

### 2. Use of Physical Force as an Element

With respect to whether § 207(a) constitutes a crime of violence under the categorical approach because it has as an element the use, attempted use, or threatened use of physical force against the person of another, Moreno-Florean argues that the use of physical force is not a necessary element of § 207(a) because § 207(a) makes it unlawful for the offender to act "forcibly, or by any other means of instilling fear." Count one of Moreno-Florean's indictment, the count underlying his kidnapping conviction, tracks this provision of § 207(a), charging that Moreno-Florean acted "wilfully, unlawfully, forcibly and by other means of instilling fear." The Government does not dispute that the use of force is not a necessary element of § 207(a). See People v. Majors, 92 P.3d 360, 363 (Cal. 2004) (holding that "the force used against the victim need not be physical" in order to sustain a conviction for kidnapping under § 207(a)).

The Government argues that Moreno-Florean's record of conviction establishes that his kidnapping offense involved injury to the victim based on the use of physical force. The Government relies on the fact that Moreno-Florean's abstract of judgment reflects that he pleaded guilty not only to count

---

[2] In an unpublished case, the Ninth Circuit held that § 207(a) was an "aggravated felony" under § 2L1.2 as it existed under a prior version of the Guidelines Manual. See United States v. Nava-Salgado, No. 98-50018, 1999 WL 51397, at *2 (9th Cir. Jan. 27, 1999). That prior version of § 2L1.2 defined "aggravated felony" as "any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed . . . is at least five years." Id. First, Moreno-Florean was sentenced to three years in prison for his kidnapping conviction, so his crime would not qualify as an "aggravated felony" under that prior version of § 2L1.2. See id. ("Nava-Salgado's sentence of eight years clearly satisfied the five-year requirement."). Second, the 18 U.S.C. § 16 definition of "crime of violence" is broader than the definition of "crime of violence" under the 2006 Version of § 2L1.2(b)(1)(A)(ii). See 18 U.S.C. § 16(b) (defining "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.") (emphasis added).

one of his indictment, kidnapping in violation of § 207(a), but also to count three of his indictment, willfully inflicting corporal injury in violation of CAL. PENAL CODE § 273.5(a). The Government argues that the use of physical force is a necessary element of § 273.5(a), such that the record of conviction establishes that Moreno-Florean used physical force with respect to his kidnapping conviction. See People v. Jackson, 91 Cal. Rptr. 2d 805, 810 (Cal. Ct. App. 2000); see also CAL. PENAL CODE § 273.5(c) (defining the term "traumatic condition").

While the indictment reflects that the kidnapping and corporal injury offenses were committed on the same day with Jane Doe as the victim, it does not establish that the conduct involved in the corporal injury offense was necessarily involved in the kidnapping offense. According to the language found in the indictment, Moreno-Florean could have kidnapped Jane Doe "by other means of instilling fear," and then later used physical force to inflict corporal injury upon her. Because we do not have a written plea agreement, transcript of the plea colloquy, or explicit factual findings by the trial judge to which the defendant assented, we cannot narrow the statute of conviction to determine which disjunctive elements of § 207(a) formed the basis of Moreno-Florean's conviction.

In determining whether a state guilty plea conviction qualifies as a drug trafficking offense under § 2L1.2(b)(1)(A)(i), we have previously considered under the categorical approach the extent to which a guilty plea serves to admit the factual averments in the indictment. See United States v. Gutierrez-Bautista, 507 F.3d 305, 307-09 (5th Cir. 2007). In Gutierrez-Bautista, we looked to the law of the state of conviction, Georgia, to determine the effect of Gutierrez-Bautista's guilty plea to trafficking in methamphetamine: the plea constituted an admission of all averments of facts in the indictment. Id. at 308. Because the indictment made a factual averment that Gutierrez-Bautista both sold and possessed methamphetamine, we determined that his guilty plea served to admit

that he both sold and possessed the drug, rendering his conviction a drug trafficking offense.  Id. at 308-09.

Like Gutierrez-Bautista, the indictment in this case charged the kidnapping offense in the conjunctive, despite the fact that the statute creating the offense, § 207(a), is phrased in the disjunctive.  See id. at 308.  The similarities to Gutierrez-Bautista end there, however, because California has not adopted Georgia's rule that a guilty plea constitutes an admission of all averments of facts in the indictment.

In California, "[a] guilty plea admits every element of the crime charged." People v. Wallace, 93 P.3d 1037, 1043 (Cal. 2004) (quotations omitted).  Based on Wallace, one might argue that Moreno-Florean's guilty plea admitted every conjunctive element alleged in the indictment.  This argument is misplaced, however, because "[i]t is well settled [in California] that where the statute enumerates several acts disjunctively, which separately or together shall constitute the [criminal] offense, the indictment, if it charges more than one of them . . . in the same count, should do so in the conjunctive."  People v. Turner, 8 Cal. Rptr. 285, 288 (Cal. Ct. App. 1960) (citing People v. O'Brien, 62 P. 297, 298 (Cal. 1900)); accord In re Bushman, 463 P.2d 727, 775 (Cal. 1970).  Furthermore, if the indictment alleges elements in the conjunctive, the defendant can be convicted if the evidence establishes any set of disjunctive elements that together constitute the criminal offense.  See Turner, 8 Cal. Rptr. at 288; see also Bushman, 463 P.2d at 775 ("Merely because the complaint is phrased in the conjunctive, however, does not prevent a trier of fact from convicting a defendant if the evidence proves only one of the alleged acts.").  Moreno-Florean's guilty plea, when viewed in conjunction with the language of the indictment, does not narrow the statute of conviction for purposes of the categorical approach.

A guilty plea is "the legal equivalent of a verdict of guilty reached by a jury."  See People v. Valladoli, 918 P.2d 999, 1005 (Cal. 1996).  If a jury could

7

have convicted Moreno-Florean of kidnapping under § 207(a) without finding that he used physical force, then a judge could have found a factual basis for his guilty plea without finding that he used physical force. See Wallace, 93 P.3d at 1043 (noting that a guilty plea in California "ordinarily includes an admission that there is a factual basis for the plea"). Moreno-Florean's guilty plea to the kidnapping count in his indictment, standing alone, does not compel a finding that he used physical force to perpetrate that crime.

The statute of conviction cannot be narrowed through reference to the guilty plea and the abstract of judgment, so we must consider "whether the least culpable act constituting a violation of that statute constitutes 'kidnapping' for purposes of U.S.S.G. § 2L1.2." Gonzalez-Ramirez, 477 F.3d at 315-16. Because kidnapping under § 207(a) can be accomplished without the use of physical force, we decline to uphold Moreno-Florean's sentence under the categorical approach. See Cervantes-Blanco, 504 F.3d at 579-80.

3.     Enumerated Offense of "Kidnapping"

We have recently considered whether kidnapping statutes from three states qualify as the enumerated offense of "kidnapping" for purposes of § 2L1.2(b)(1)(A)(ii). See Cervantes-Blanco, 504 F.3d 576 (determining that COLO. REV. STAT. ANN. § 18-3-302(1) did not qualify); Iniguez-Barba, 485 F.3d 790 (determining that N.Y. PENAL LAW § 135.20 qualified); Gonzalez-Ramirez, 477 F.3d 310 (determining that TENN. CODE ANN. § 39-13-303 qualified); see also United States v. Garcia-Gonzalez, 168 F. App'x 564, 565 (5th Cir.), cert. denied, 127 S. Ct. 187 (2006) (determining that TEX. PENAL CODE § 20.03(a) qualified).

In Gonzalez-Ramirez, 477 F.3d at 316-19, we considered the definition of kidnapping in the Model Penal Code (MPC) and kidnapping statutes of other states, and we determined that TENN. CODE ANN. § 39-13-303 did not sweep more broadly than the enumerated offense of "kidnapping" based on the statute's elements:

(1)    knowing removal or confinement;

(2)    substantial interference with the victim's liberty;

(3)    (a) force, threat, or fraud, or (b) if the victim is incompetent or under age thirteen, lack of consent from the person responsible for the general supervision of the victim's welfare; and

(4)    (a) circumstances exposing the victim to substantial risk of bodily injury, or (b) confinement as a condition of involuntary servitude . . . .

Id. at 318-19.   Although the MPC's definition of kidnapping required that removal or confinement occur due to a specified purpose, such as ransom or the infliction of bodily injury, we determined that § 39-13-303 qualified as the enumerated offense of "kidnapping" under § 2L1.2 without a specified purpose element.[3]  Id. at 318.  We found it significant that "Tennessee requires the use of force, threat, or fraud along with the additional aggravating elements of substantial risk of injury or confinement as a condition of involuntary servitude." Id. at 319.

In Iniguez-Barba, 485 F.3d at 791-93, we determined that N.Y. PENAL LAW § 135.20 qualified as the enumerated offense of "kidnapping" even though it included only the first three of the four elements present in § 39-13-303, lacking the element of risk of injury or confinement as a condition of involuntary servitude.  We noted that our decision was consistent with Garcia-Gonzalez, 168 F. App'x at 565, an unpublished case which held that the enumerated offense of

---

[3] The MPC defines the most serious imprisonment offense, kidnapping, in the following manner:  "A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes: (a) to hold for ransom or reward, or as a shield or hostage; or (b) to facilitate commission of any felony or flight thereafter; or (c) to inflict bodily injury on or to terrorize the victim or another; or (d) to interfere with the performance of any governmental or political function."  MODEL PENAL CODE § 212.1 (2001); accord Gonzalez-Ramirez, 477 F.3d at 316.

"kidnapping" included a Texas statute that was nearly identical to the New York statute and likewise lacked the requirement of risk of injury or involuntary servitude. Iniguez-Barba, 485 F.3d at 793.

In Cervantes-Blanco, 504 F.3d at 586-87, we determined that COLO. REV. STAT. § 18-3-302(1) did not qualify as the enumerated offense of "kidnapping," reasoning that it lacked the second and fourth elements present in § 39-13-303, did not explicitly require "force or fraud" as required under the third element of § 39-13-303, and lacked either the specified purpose elements contained in the MPC definition or any other additional aggravating elements. We summarized our analysis as follows:

> The question therefore becomes whether a statute that contains only the Gonzalez-Ramirez first element, "knowing removal or confinement," and possibly the Gonzalez-Ramirez third element, "(a) force, threat, or fraud, or (b) if the victim is incompetent or under age thirteen, lack of consent from the person responsible for the general supervision of the victim's welfare," and lacks any additional aggravating elements, such as the specified purpose requirements of the MPC definition, qualifies as the enumerated offense of "kidnapping." We conclude that it does not. While Gonzalez-Ramirez did not hold that any particular elements are essential, the court did emphasize that where the specified purposes of the MPC kidnapping definition are lacking, some aggravating elements are necessary to bring a statute closer to the MPC definition of kidnapping.

Id. at 586 (italics in original). We concluded that "a kidnapping statute . . . which lacks the specified purposes of the MPC definition and other aggravating elements identified in Gonzalez-Ramirez and Iniguez-Barba, and also lacks an explicit 'force or fraud' requirement, does not qualify as the enumerated offense of 'kidnapping.'" Id. at 587.

Relying on these three cases, Moreno-Florean argues that CAL. PENAL CODE § 207(a) lacks the elements necessary to qualify it as the enumerated offense of "kidnapping." He argues that, similar to the Colorado statute

considered in Cervantes-Blanco, § 207(a) lacks the second and fourth elements present in § 39-13-303. That is, he argues that § 207(a) does not require "substantial interference with the victim's liberty" and "(a) circumstances exposing the victim to substantial risk of bodily injury, or (b) confinement as a condition of involuntary servitude." He also argues that § 207(a) lacks the specified purpose requirements contained in the MPC definition. The Government points out that, unlike COLO. REV. STAT. § 18-3-302(1), § 207(a) explicitly contains the third element of § 39-13-303, the "force or fraud" requirement.

COLO. REV. STAT. § 18-3-302(1), which does not qualify as the enumerated offense of "kidnapping," states the following: "Any person who knowingly seizes and carries any person from one place to another, without his consent and without lawful justification, commits second[-]degree kidnapping." CAL. PENAL CODE § 207(a), which is the subject of this appeal, uses language similar to the Colorado statute: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping."

We must first determine whether the Colorado statute is distinguishable from the California statute because the California statute contains an explicit "force or fraud" element. In other words, if the presence of two explicit elements identified in Gonzalez-Ramirez is sufficient to qualify § 207(a) as the enumerated offense of kidnapping, then § 207(a) is a COV and our analysis ends. It is undisputed that § 207(a) contains the first and third elements identified in Gonzalez-Ramirez: (1) knowing removal and confinement; and (3) force, threat, or fraud.

The presence of these two explicit elements, standing alone, is not sufficient to qualify § 207(a) as a COV. If these two elements were deemed

11

sufficient to constitute the enumerated offense of kidnapping, then dissimilar state kidnapping offenses would be treated identically for purposes of the COV enhancement. See Cervantes-Blanco, 504 F.3d at 580, 586-87. This would be inconsistent with the Sentencing Guideline's goals of uniformity and predictability. See United States v. Ashburn, 20 F.3d 1336, 1347 (5th Cir. 1994). A two-element definition of kidnapping would sweep more broadly than the generic, contemporary meaning of the crime. See Gonzalez-Ramirez, 477 F.3d at 319-20. Additional aggravating elements, such as the second and forth elements identified in Gonzalez-Ramirez, or the specified purpose requirements of the MPC definition, are necessary to qualify § 207(a) as the enumerated offense of "kidnapping." See Iniguez-Barba, 485 F.3d at 792-93 (concluding that "the first three of those four elements" in Gonzalez-Ramirez "proscribes the generic offense of 'kidnapping'").

Additional aggravating elements do not appear anywhere in the text of § 207(a).[4] See Cervantes-Blanco, 504 F.3d at 585 ("For both the Tennessee statute addressed in Gonzalez-Ramirez and the New York statute at issue in Iniguez-Barba, the 'substantial interference' language appears explicitly in the definitions of terms used in the statutes."). In Cervantes-Blanco, we examined Colorado case law to determine whether the "force or fraud" requirement of Gonzalez-Ramirez was equivalent to the explicit "without consent and lawful justification" element found in the Colorado second-degree kidnapping statute. 504 F.3d at 585. In Colorado, a kidnapping compelled through force or express threats is "without consent," see Colorado v. Maass, 981 P.2d 177, 186 (Colo. Ct. App. 1998), but we noted that "it is possible that these terms [without consent and without lawful justification] have some broader meaning." Cervantes-

---

[4] In particular, "[w]e have not found [and the Government has not cited to] any [California] decision that imparts a "substantial interference" element to [§ 207(a)]." See Cervantes-Blanco, 504 F.3d at 586.

Blanco, 504 F.3d at 585. Following the lead of Cervantes-Blanco, we will examine California case law to determine whether additional aggravating elements are necessarily subsumed within the explicit elements of § 207(a).

Because Moreno-Florean pleaded guilty, we do not have a jury charge that sets forth the elements of a § 207(a) violation. California appellate courts have cited approvingly to the Judicial Council of California Criminal Jury Instructions (CALCRIM) and the Committee on California Criminal Jury Instructions (CALJIC) when discussing criminal jury charges. See, e.g., People v. Wyatt, 81 Cal. Rptr. 3d 911, 917-18 (Cal. Ct. App. 2008) (CALCRIM); People v. Martinez, 973 P.2d 512, 520 (Cal. 1999) (CALJIC). CALJIC states the following elements for kidnapping under § 207(a): "(1) a person was unlawfully moved by the use of physical force, or by any other means of instilling fear; (2) the movement of the other person was without his consent; and (3) the movement of the other person in distance was substantial in character." CALJIC § 9.50 Kidnapping—No Other Underlying Crime (2005 Revision). To consent, a person must "(1) act freely and voluntarily and not under the influence of threats, force, or duress; (2) have knowledge that he was being physically moved; and (3) possess sufficient mental capacity to make an intelligent choice whether to be physically moved by the other person." CALJIC § 9.56 No Kidnapping When Free Consent.

The CALCRIM elements for kidnapping under § 207(a) are effectively identical to CALJIC's, just in a different order: "(1) the defendant took, held, or detained another person by using force or by instilling reasonable fear; (2) using that force or fear, the defendant moved the other person or made the other person move a substantial distance; and (3) the other person did not consent to the movement." CALCRIM § 1215 Kidnapping (Pen. Code § 207(a)) (2008). Importantly for purposes of this appeal, CALCRIM defines the term "substantial distance:"

> Substantial distance means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors such as whether the movement increased the risk of [physical or psychological] harm, increased the danger of a foreseeable escape attempt, gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection.

Id. (emphasis added).

Both the CALCRIM and the CALJIC elements for kidnapping under § 207(a) correspond to those elements recognized by California appellate courts. See, e.g., People v. Jones, 133 Cal. Rptr. 2d 358, 362 (Cal. Ct. App. 2003) ("Generally, to prove the crime of kidnapping, the prosecution must prove three elements: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance."). The explicit elements of kidnapping recognized by CALCRIM, CALJIC, and Jones only correspond to two of the four elements identified in Gonzalez-Ramirez.

Under California case law, some aggravating factors discussed in Gonzalez-Ramirez and some specified purposes of the MPC definition are contextual factors that a jury may consider in determining whether the state proved the asportation element of § 207(a). Prior to 1999, the California Supreme Court defined the asportation element for kidnapping in terms of the actual distance moved and concluded this element was satisfied if this distance was substantial in character. See People v. Caudillo, 580 P.2d 274, 279 (Cal. 1978). The court overruled Caudillo's determination that actual distance was the litmus test for asportation in People v. Martinez, 973 P.2d 512 (Cal. 1999). The court explained: "Section 207(a) proscribes kidnapping or forcible movement, not forcible movement for a specified number of feet or yards. Our apparent limitation to actual distance in Caudillo adds language to the statute that is

simply not there. Indeed, as we have historically recognized for both aggravated and simple kidnapping, limiting a trier of fact's consideration to a particular distance is rigid and arbitrary, and ultimately unworkable." Id. at 519.

In Martinez, the California Supreme Court adopted a totality of the circumstances test for the asportation element:

> [I]n determining whether the movement is "substantial in character," the jury should consider the totality of the circumstances. Thus, in a case where the evidence permitted, the jury might properly consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes.

Id. at 520 (citation omitted). Of the contextual factors mentioned in Martinez, the "increased the risk of harm" factor is equivalent to the fourth element discussed in Gonzalez-Ramirez, see 477 F.3d at 318, and the "enhanced opportunity to commit additional crimes" factor is the equivalent of one of the specified purposes of the MPC definition. See MODEL PENAL CODE § 212.1 (identifying one specified purpose as "to facilitate commission of any felony or flight thereafter").

In California, a jury can find that the asportation element of § 207(a) is satisfied based on distance alone, without consideration of (1) the other aggravating factors discussed in Gonzalez-Ramirez or (2) the specified purposes of the MPC definition. See Martinez, 973 P.2d at 541 ("While the jury may consider a victim's increased risk of harm, it may convict of simple kidnapping without finding an increase in harm, or any other contextual factors. Instead, as before, the jury need only find that the victim was moved a distance that was 'substantial in character.'"). Based on the California Supreme Court's statement in Martinez, there is a "realistic probability" that California "would apply [§

207(a)] to conduct that falls outside the generic definition" of kidnapping. Gonzales v. Duenas-Alvarez, 127 S. Ct. 815, 822 (2007); see also United States v. Ramos-Sanchez, 483 F.3d 400, 403-04 (5th Cir. 2007).

A "contextual factor," which is part of a "totality of the circumstances" test and is not necessarily considered by the jury, is not the equivalent of an element for purposes of our enumerated offense analysis. Because the least culpable act constituting a violation of § 207(a) only requires proof of two elements discussed in Gonzalez-Ramirez, we conclude that § 207(a) sweeps more broadly than the generic, contemporary meaning of "kidnapping."[5]

### 4. Alternative Sentence

The Government also argues that the district court provided detailed, fact specific reasons for its sentence based on the factors under 18 U.S.C. § 3553(a), such that the district court provided an alternative basis for its sentence. The Government argues that the sentence should be affirmed because Moreno-Florean cannot show that the "alternative sentence" was unreasonable. While the district court discussed facts pertaining to the § 3553(a) factors, it did not impose any alternative sentence. Without the sixteen-level COV enhancement, Moreno-Florean's guidelines range would have been significantly less than fifty-seven to seventy-one months of imprisonment. Before the district court imposes a non-guideline sentence, it must first properly calculate the applicable guideline range. United States v. Bonilla, 524 F.3d 647, 656 (5th Cir. 2008). Because we cannot say that Moreno-Florean's sentence did not "result" from an incorrect application of the guidelines, we cannot affirm his sentence on the basis of the Government's "alternative sentence" theory. See id.

### II. CONCLUSION

---

[5] The Government also contends that the record of conviction may be used to narrow Moreno-Florean's kidnapping conviction, such that the kidnapping conviction falls within the generic, contemporary definition of kidnapping. We reject this argument for the same reasons we rejected it with regard to the categorical approach.

It was plain error to enhance Moreno-Florean's sentence under § 2L1.2(b)(1)(A)(ii) because no Fifth Circuit case has held that the generic, contemporary meaning of "kidnapping" requires proof of only two elements discussed in Gonzalez-Ramirez and does not require proof of any of the specified purposes of the MPC definition. Furthermore, this error affected Moreno-Florean's substantial rights because the COV enhancement substantially increased his offense level under the guidelines, and there is a reasonable probability that he received a higher sentence than we would have received without the enhancement. See United States v. Villegas, 404 F.3d 355, 365 (5th Cir. 2005); see also United States v. Garza-Lopez, 410 F.3d 268, 275 (5th Cir. 2005) (holding that erroneous enhancement for prior drug-trafficking offense resulting in a substantially different sentence affected the fairness of judicial proceedings). For these reasons, we will exercise our discretion to VACATE Moreno-Florean's sentence and REMAND for resentencing consistent with this opinion.

VACATE and REMAND.